Honorable John G. McGoldrick Counsel to the Governor
This is in reply to your letter of April 19, 1982, in which you ask whether the Legislature had the power with respect to the 1982-83 Fiscal Year Appropriation Bills to (a) add restrictive language to items of appropriation in such bills submitted by the Governor, or (b) increase the amount of items of appropriation in the Governor's submissions.
We conclude that the Legislature by acting in the manner it chose here, did not follow procedures for action on appropriation bills required by the Constitution.
We also conclude that the Governor's disapproval of those revisions is not subject to override by the Legislature since his action, as a matter of law, did no more than indicate his view that the changes were not permissible.
Our conclusion should not be construed, however, as in any way depriving the Legislature of its substantive power to propose increases in items of appropriation or to propose qualifications or limitations on items different from those proposed by the Governor. Thus, the Legislature can act to increase appropriations by adding items of appropriation to the Governor's bill, provided such items are stated separately and distinctly from the original items of the bill, or by initiating its own appropriation bills after final action on the Governor's submissions. Moreover, it can accomplish its objective to restrict or allocate the expenditure of appropriated funds by enacting separate bills. Furthermore, we recognize that in the past the Executive and Legislature have frequently agreed on language additions or changes of the type involved here. Especially since the Governor may amend his own appropriation bills (see Article VII, § 3 of the Constitution), we assume also that the courts will not intervene in a situation where the strict allocation of appropriation power between the Legislature and Governor may not have been followed to the letter but both are satisfied with the final results (cf. Saxton v Carey, 44 N.Y.2d 545, 550 [1978]).
The Constitution spells out precisely the respective powers of the Governor and the Legislature in adopting the annual budget (Art VII, §§ 1-6).* The Governor controls the preparation of the annual budget but representatives of the "appropriate committees of the legislature" are "entitled to attend the hearings" at which State agency heads present their recommendations (§ 1). Following the hearings, the Governor is required to submit a budget to the Legislature "containing a complete plan of expenditures" for the ensuing fiscal year, an estimate of revenues, and "such other recommendations and information" as the Governor "may deem proper and such additional information as may be required by law" (§ 2). (For required additional information, see State Finance Law, § 22.) At the time that the budget is submitted, the Governor is required to submit bills appropriating the money to cover the expenditures proposed in the submitted budget (§ 3).
The Legislature's budget power is specified in Article VII, § 4:
 "The legislature may not alter an appropriation bill submitted by the governor except to strike out or reduce items therein, but it may add thereto items of appropriation provided that such additions are stated separately and distinctly from the original items of the bill and refer each to a single object or purpose."
The quoted language literally grants the Legislature power only "to strike out or reduce items", and to add "items of appropriation" but only if the added items "are stated separately and distinctly from the original items" (ibid.). In this context the word "items" means a dollar amount, plus the description of what is covered by that amount, since appropriations are appropriations of dollars. It is also to be noted that the Governor has the power to amend the submitted appropriation bills (§ 3). "Amend" appears to be broader than "strike out or reduce" or "add items of appropriation", which is the extent of the Legislature's power to revise the Governor's appropriation items.
With respect to those actions of the Senate and the Assembly to increase appropriation items in the Governor's submission specified in paragraph 2 of your request, it is clear that the constitutionally prescribed method for adding items of appropriation has not been followed.
Unless compelling constitutional history or judicial interpretation indicate otherwise, this precise and specific constitutional language governing increases must be taken literally. As for the constitutional history, it dates from the Constitutional Convention of 1915 at which one of the major proposals was the institution of an "Executive Budget" (see Schick, The New York State Constitutional Convention of 1915 and the Modern State Governor [National Municipal League 1978] pp 131-133). That convention proposed a budget process analogous to today's Constitution. The proposed Constitution was defeated at the polls, but the drive for an executive budget continued, culminating in a successful amendment adopted in 1927 adding a new Article IV-A to the Constitution devoted solely to the Executive Budget. The words quoted above from section 4 of Article VII appear in section 2 of the 1927 Article IV-A. The 1938 Constitutional Convention made a number of changes in other provisions concerning the Executive Budget, including, of course, deleting Article IV-A and transferring the provisions to Article VII. The Executive Budget provisions have remained unchanged since 1938 except for an amendment in 1965 that requires the Governor to submit the budget at an earlier date in years other than the first year of the Governor's term (§ 2).
The 1915 Convention proposal for an Executive Budget differed from the present provisions in that it permitted the Legislature to strike out or reduce items but not to add items. Additions could be made only in separate bills passed after final passage of the appropriation bills (New York State Constitutional Convention, 1915, Article V, § 1, Document No. 52, pp 21-22). The 1927 amendment changed the 1915 provision to permit the addition of items in the appropriation bills. There is nothing in the constitutional history to indicate that this change was more than an effort simply to avoid the necessity of enacting a number of individual appropriation bills following final passage of the Governor's appropriation acts.
With respect to those actions by the Senate and Assembly to restrict or impose conditions on appropriation items in the Governor's appropriation bills, specified in paragraph 1 of your request, we also find that the Legislature did not adhere to the constitutional requirements set forth in Article VII, § 4.
Our conclusion is based primarily on the specific language of Article VII, § 4 and the overall constitutional scheme for budget action. However, no New York cases dealing with the distribution of power between the Legislature and the Governor over the budgeting process are squarely on point, and the issue is not entirely free from doubt.
The central question is whether the Legislature's express authority "to strike out or reduce" items of appropriation includes restrictions or conditions imposed by the Legislature on the spending of appropriated funds.
In People v Tremaine, 252 N.Y. 27 (1929), Judge Pound, writing for the Court, addressed a question "at present largely academic" (252 N Y at 48) that is involved here. The question was whether a "rider" added by the Legislature was in violation of section 3 of Article IV-A (now Art VII, § 4). The rider, declared invalid on other grounds, provided that no part of a supplemental appropriation act could be spent for personal services except with the approval of the Governor and the Chairmen of the appropriate Senate and Assembly committees. In dictum, Judge Pound said:
 "The rider is an alteration of such bill other than by striking out or reducing items therein; it is not an addition of an item of appropriations stated separately and distinctly from the original items of the bill and referring to a single object or purpose and its insertion in the bill was improper." (Id.,
at 49).
See also 1978 Opinions of the Attorney General 76. There, the Legislature added to a deficiency budget bill submitted by the Governor an appropriation for the Commerce Department and qualifying language as to its use. The dollar amount of the item was the same as that passed by the Legislature in the main budget. Although concluding that the Governor properly exercised a line item veto of the item, the Attorney General further noted that:
 "* * * Article VII, § 4 of the Constitution only authorizes the Legislature to act in relation to appropriation bills by reducing, striking or adding items of appropriation and that where there is no change in the dollar amount of an item of appropriation, there is no authority for the Legislature to add the item to a succeeding appropriation bill for the sole purpose of adding qualifying language thereto * * *."
Thus, Attorney General Lefkowitz concluded that limiting language in appropriation bills as to the expenditure of funds was not authorized by Article VII, § 4 of the Constitution. In the absence of a judicial pronouncement on point, this opinion is authority for the proposition that the Legislature may not add conditional language to the Governor's appropriation bill.
However, as noted earlier, the matter is not free from doubt, and similar, if distinguishable, issues have been decided differently elsewhere. In Maryland, for instance, the highest court decided that the Legislature's authority "to reduce or strike out an item of appropriation necessarily includes the authority to condition or limit the use of money appropriated, provided the condition or limitation is directly related to the expenditure of the sum appropriated, does not, in essence, amend either substantive legislation or administrative rules adopted pursuant to legislative mandate, and is effective only during the fiscal year for which the appropriation is made." Bayne v Secretary of State, 392 A.2d 67,74 (Md, 1978).
The Maryland constitutional scheme and the provisions interpreted in theBayne decision differ dramatically from their opposite numbers in New York, but the decision serves to illustrate the difficulty in drawing a precise conceptual distinction between a condition or limitation on the one hand and a striking out or reduction on the other.
We conclude that under section 4 of Article VII, the Legislature, in the course of passing appropriation acts submitted by the Governor:
 (a) may strike out items of appropriation, including the accompanying text;
 (b) may reduce items of appropriation but may not alter the accompanying text;
(c) may not increase items of appropriation;
 (d) may add items of appropriation with accompanying text stating the object or purpose;
 (e) may not, at least in the absence of concurrence by the Governor, amend the bill otherwise than to the extent set forth in (a), (b) and (d) above.
* These powers are distributed differently in the case of appropriations for the Legislature and the Judiciary. These appropriations are not involved here.